UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOSEPH LOCHRIDGE,<br><br>            Plaintiff,<br><br>   v.<br><br>CITY OF TACOMA, DEPARTMENT OF TACOMA PUBLIC UTILITIES, TACOMA RAIL, a municipal corporation,<br><br>            Defendant. | CASE NO. C09-5010BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff's motion for partial summary judgment (Dkt. 34). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On January 12, 2009, Plaintiff filed his complaint against Defendant. On February 18, 2009, Defendant answered. On February 11, 2010, this matter was reassigned to the undersigned. Dkt. 23. On March 4, 2010, Plaintiff filed the instant motion for partial summary judgment. Dkt. 34. On March 23, 2010, Defendant responded. On March 26, 2010, Plaintiff replied. Dkt. 58.

**II. FACTUAL BACKGROUND**

This matter involves Plaintiff's complaint for personal injuries and damages, arising out of an accident that occurred at Plaintiff's place of employment. Dkt. 1

ORDER - 1

1  (Complaint) at 1. Plaintiff, at all material times, was employed by Defendant as a
2  locomotive engineer. Complaint ¶ 1.

3  Plaintiff alleges that his injury occurred on March 18, 2007, while he was engaged
4  in the regular course and scope of his employment. Complaint ¶ 7. On that day, Plaintiff
5  worked a shift as an engineer on Locomotive No. 1523 (hereinafter "L-1523").
6  Declaration of Bahareh Samanian (Samanian Decl.), Ex. 1, Deposition of Joseph
7  Lochridge (Lochridge Dep.) at 117-18. At the beginning of this shift, Plaintiff did a visual
8  inspection of L-1523. *Id.*

9  Following the visual inspection, Plaintiff started "moving the motor." *Id*. at 118.
10 At this point, Plaintiff noticed some liquid, which he refers to as anti-freeze,[1] flowing into
11 the trough along the engineer's side of the locomotive. Lochridge Dep. at 119-20. Shortly
12 thereafter, the engine died. *Id*. at 128. Plaintiff then exited the cab on the conductor's
13 side[2] so he could inspect the leak. *Id*. at 130. Plaintiff testified that the liquid was "all the
14 way down the trough" but that it was confined to the trough, i.e., not on the walkway that
15 he walked along to inspect the engine. *See id.* at 130. Upon further inspection, Plaintiff
16 determined that a hose had become unattached. *Id*. at 132. Apparently, a coolant hose had
17 become unattached. *See id*; *see also* Warner Aff. ¶ 5.

18 After unsuccessfully attempting to reattach the hose, Plaintiff returned to the cab
19 of the locomotive. Lochridge Dep. at 138. During this time, Plaintiff testified that he did
20 not recall seeing the green water getting onto the walkway or onto his boots. *See id*. at
21 136. Upon returning to the cab, Plaintiff called the yardmaster. *Id*. at 139.

---

[1] Plaintiff refers in the record to the liquid as "anti-freeze." It appears, however, that the liquid Plaintiff saw was actually water. *See, e.g.,* Dkt. 53, Affidavit of Gregg Warner (Warner Aff.) ¶ 10 (senior mechanic discussing what will occur when water leaks as a result of a coolant hose coming unattached).

[2] The conductor's side of the locomotive is on the left side of the cab and is also known as the fireman's side. The right side is referred to as the engineer's side.

Then, Plaintiff claims that he stood up on the foot rail of his chair in an effort to see where Sean Merrill ("Merrill"), another rail worker, was in order to warn him to stay away from the leaking fluid, which Plaintiff believed to be capable of burning Merrill. *Id*. at 140-41. Plaintiff claims he then slipped off the foot rail and fell onto the floor. *Id*. at 140-49 (detailing thoroughly Plaintiff's recollection of the fall). Plaintiff testified that prior to his fall he had not observed any liquid on his feet, shoes, or on the floor of the locomotive's cab. *Id*. at 160.

However, Plaintiff contends that he slipped due to oil that had gotten onto his boots when he used the walkway to inspect the coolant hose that became unattached. *Id.* at 168; *see also, e.g.,* Dkt. 34 at 6 (setting out Plaintiff's theory that oil from L-1523 walkway caused Plaintiff to slip and fall). Plaintiff asserts that he noticed the oil after his fall. *See id* at 173-76; *see also* Dkt. 34 (statement of facts set out Plaintiff's theory).

In opposition to Plaintiff's theory, Defendant contends that either there was no oil at all or that there was an insufficient amount to constitute a violation of the regulations to which the Defendant is subject. *See* Dkt. 52. To support it's position, Defendant relies on four declarations of mechanics that worked on and inspected L-1523 after Plaintiff's fall. Defendant also notes that Plaintiff's boots were inspected after his fall and that no oil or other liquid was found. Dkt. 52-3, Ex. 5 (inspection report filed by Leslie Whiteman). Defendant also relies on the depositions of two other employees, Shawn Merrill and Kirk Sides, who were on or near L-1523 when Plaintiff became injured.

Additionally, Plaintiff relies on the Deposition of Leslie Whiteman (Whiteman Dep.) for the fact that she took pictures of L-1523 and noted "that there was no evidence of any oil or water, or other slip hazard." Dkt. 52 at 7 (citing Whiteman Dep. at 10-14 and 16-17). However, Whiteman did not take photos of the conductor's side of L-1523, only the engineer's side.[3]

---

[3]Plaintiff contends he stepped in oil on the conductor's side of the locomotive. Whiteman admits she did not take, or does not have, photos that were taken from this side of L-1523 shortly

ORDER - 3

### III. DISCUSSION

**A.   Jurisdiction**

This matter involves a federal question based upon Title 45 U.S.C. § 51, *et seq.*, commonly known as the Federal Employers' Liability Act. Plaintiff alleges violation of the Federal Locomotive Inspection Act ("LIA"), formerly known as the Boiler Inspection Act ("BIA"), 49 U.S.C. § 20701, *et seq.*, 49 C.F.R. 229, *et seq.*, specifically, 49 C.F.R. §§ 229.119(c) and 229.45. Therefore, the Court has original jurisdiction over this timely filed action. *See* 28 U.S.C. § 1331.

**B.   Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

---

following the accident. Therefore, the Court declines to consider the fact that Whiteman's pictures may reveal the absence of oil on the engineer's side of the locomotive because they do not appear probative as to whether oil was present on the conductor's side of L-1523 on the day of the accident.

ORDER - 4

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*.  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**C.    Plaintiff's Summary Judgment Motion**

Plaintiff moves the Court to find that Defendant is "liable as a matter of law under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, *et seq*., for failing to comply with safety regulations 49 C.F.R. §§ 229.119 and 229.45 promulgated under the authority of the Locomotive Inspection Act (LIA), 49 U.S.C. § 20701, *et seq*." Dkt. 34 at 2. Plaintiff "further requests a ruling that [Defendant's] violations caused – in whole or in part – his injuries, and that [Defendant's] violations preclude it from asserting the defense of contributory negligence." *Id*. Plaintiff's theory appears to be that, when he exited the locomotive cab to inspect the insecure attachment of a coolant hose, he stepped in oil on the path he walked along to and from the cab and that this oil caused his accident. This theory depends on some amount of oil being present on the L-1523 where Plaintiff could have stepped in it and it could be considered to have caused his accident. *See* Dkt. 34 at 3 (alleging that Plaintiff "stepped in the oil on the walkway and then slipped on the foot rail in the locomotive cab and fell to the ground.").

ORDER - 5

### 1. "In Use" Locomotive

As a threshold matter, liability will only exist under the LIA where the locomotive in question is "in use" at the time of the accident. The question of whether a train is in use is a matter of law for the court. *See Pinkham v. Maine Cent. R.R.*, 874 F.2d 875, 881 (1st Cir. 1989); *Steer v. Burlington N., Inc.*, 720 F.2d 975, 977 n. 4 (8th Cir. 1983). These cases stand for the general proposition that a locomotive will be found to be "in use" for purposes of the LIA when it is in active service (i.e., not being serviced in a place of repair). There is no evidence presented by Defendant that L-1523 was not "in use" when Plaintiff was injured. Indeed, all the evidence presented supports the conclusion that the train was "in use."

Therefore, the Court concludes that, as matter of law, L-1523 was "in use" at the time of Plaintiff's accident for purposes of the LIA and grants summary judgment on this issue.

### 2. 49 C.F.R. § 229.119(c)

Under the FELA, a railroad is strictly liable for injuries caused by a violation of a statute or regulation enacted for the safety of railroad employees. *Lilly v. Grand Trunk R. Co.*, 317 U.S. 481, 485 (1943); *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 432-33 (1958). The LIA was enacted by Congress for the purpose of promoting safety for railroad employees and the public. *Id.*

For the purposes of employees' lawsuits, the LIA eliminates the necessity of proving that a violation of a safety statute constitutes negligence; rather, proof of such a violation is effective to show negligence as a matter of law. *Urie v. Thompson*, 337 U.S. 163, 189 (1949). In order to establish negligence as a matter of law, a plaintiff must show that (1) a defendant violated a provision of the LIA, and (2) such violation caused that plaintiff's injuries. *See Kernan*, 355 U.S. at 432-33.

Relevant here, the Federal Railroad Administration ("FRA") has promulgated the following railroad locomotive safety regulation: "Floors of cabs, passageways, and

compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping, or fire hazard." 49 C.F.R. § 229.119(c) (2003). In order to succeed on his motion for summary judgment, Plaintiff must show that (1) Defendant violated 49 C.F.R. § 229.119(c), and (2) such violation caused Plaintiff's injuries. To support its motion, Plaintiff provides evidence in the form of photographs, internal reports completed by Defendant, and Plaintiff's testimony in order to prove that the alleged oil on L-1523 violated 49 C.F.R. § 229.119(c) and caused Plaintiff to fall and thereby become injured.

In opposition, Defendant argues that the proper reading of 49 C.F.R. § 229.119(c) permits a violation to be found not by the mere presence of oil, but rather only when the oil creates a slipping hazard. *See* Dkt. 52 at 9-10. Such an interpretation is supported by a Fifth Circuit Court of Appeals decision. *See Gregory v. Missouri Pacific R. Co.*, 32 F.3d 160 (5th Cir. 1994). In *Gregory*, an employee brought suit against his railroad employer after he slipped and fell in oil on a locomotive walkway. *Id.* at 165. On appeal from a judgment for Gregory, the court held that the regulation is not violated by the mere presence of any oil on a passageway; rather, the presence of oil is a violation *only if it creates a "slipping, tripping, or fire hazard." Id.* (emphasis added).

When interpreting the regulation according to its plain and ordinary meaning, it clearly prohibits the presence of specific substances of oil, water, and waste. The regulation then goes on to generally prohibit any other "obstruction" that creates a "slipping, tripping, or fire hazard." See 43 C.F.R. § 229.119(c). The Court interprets this statute consistent with the Fifth Circuit's reading that oil, water, and waste are specifically named obstructions that have to be present in a certain amount before it can be considered a *hazard* under the regulation. Such a conclusion appears to be the result of a fair reading of the regulation's plain language. Plaintiff has not provided adequate authority to support a "mere presence" interpretation of § 229.119(c). Moreover, even the FRA's compliance manual states that "a locomotive may not be absolutely clean and free of all accumulations of oil, but still be in compliance . . . ." Dkt. 52-3, Affidavit of

ORDER - 7

Margaret Elofson, Ex. 7 at 8-2 (FRA compliance manual setting out guidelines for inspectors to use in determining compliance with federal laws and regulations).

Given this interpretation, the Court concludes that Defendant can defeat Plaintiff's motion for summary judgment upon establishing a question of material fact as to whether oil was present at all or, alternatively, in an amount constituting a hazard under the regulation. In opposing Plaintiff's motion, Defendant relies on, among other things, the affidavits and depositions of other employees of Defendant.

Merrill was on or near L-1523 when Plaintiff became injured. Dkt. 52-3, Ex. 4, Deposition of Shawn Merrill (Merrill Dep.). Merrill testified that he did not recall whether L-1523 "had a problem with too much oil on it" on the day in question. *Id.* at 49. Merrill also testified that he did not recall Plaintiff informing him that any liquid caused Plaintiff to slip that day. *Id.* at 47-48.

Gregg Warner ("Warner") is a senior mechanic at Tacoma Rail (Defendant). Dkt. 53, Affidavit of Gregg Warner (Warner Aff.) ¶ 1. Warner stated that he inspected L-1523 on Monday morning, March 19, 2007 (the day after Plaintiff's accident). *Id.* ¶ 2. Warner stated that he did "not recall seeing any surfaces that had oil on them . . . ." *Id.* ¶ 4 (further stating that he believed he would have noticed if there was excessive oil). Warner also stated that L-1523 had received its quarterly inspection five days earlier, which includes making "sure the walkways are clear and are free of oil or other substances." *Id.* ¶ 11.

Mack Foster ("Foster") is a mechanic at Tacoma Rail. Dkt. 54, Affidavit of Mack Foster (Foster Aff.) ¶ 1. On March 18, 2007 (the day in question), Foster inspected L-1523 "with Casey Stoddard after [Plaintiff's] incident." *Id.* at ¶ 2. Foster stated that he did not "find any oil on the walkways or on the floor of the locomotive cab." *Id.* at ¶ 3.

Casey Stoddard ("Stoddard") is a mechanic at Tacoma Rail. Dkt. 55, Affidavit of Casey Stoddard (Stoddard Aff.) ¶ 1. Stoddard's affidavit is consistent with Foster's. *Compare* Stoddard Aff. ¶¶ 2-3 with Foster Aff. ¶¶ 2-3. Stoddard further specified that he walked down walkways on both the fireman's (conductor's) side and the engineer's side

of L-1523. Stoddard Aff. ¶¶ 3-4. As discussed above, Plaintiff contends he stepped in oil on the fireman's (conductor's) walkway. Stoddard stated that he did "not recall seeing any oil on the [Conductor's] walkway." *Id*. ¶ 3 (further stating that he would have noticed presence of excessive oil). Stoddard also noted that he "did not observe any water on any surfaces outside the engine compartment." *Id*. at 6.[4]

Quang Nguyen ("Nguyen") is a mechanic at Tacoma Rail. Dkt. 56, Affidavit of Quang Nguyen (Nguyen Aff.) ¶ 1. Nguyen inspected the L-1523 on March 19, 2007, the day after the incident. *Id*. ¶ 2. Nguyen stated that he looked for but "did not find any oil or liquids on the walkways or the cab floor, or anywhere else where [Plaintiff] could have stepped in those liquids." *Id*. ¶¶ 3-4.

Kirk Sides ("Sides") is a "helper" at Tacoma rail. Dkt. 52-2, Deposition of Kirk Sides (Sides Dep.). In his deposition, Sides offers an alternative explanation as to how Plaintiff could have fallen. *See id*. at 66. Sides speculates that Plaintiff fell as a result of a hard joint. *Id*. However, as Plaintiff correctly points out, such testimony is not based on Sides' personal knowledge. The Court notes that it has not considered Sides' deposition to the extent he discusses how Plaintiff, specifically, was injured. However, the Court also notes that Sides does appear to have personal knowledge of how a hard joint could cause a person to fall. *See id.* at 67. Sides testified that he has fallen as the result of a hard joint and that it caused him to hit a wall inside the cab of a locomotive. *Id*. Taken in the light most favorable to Defendant, this testimony establishes a question of fact as to what could have caused Plaintiff to fall on the day in question because there is testimony in the record that a hard joint occurred at or around the time that Plaintiff became injured.

---

[4]Even if Plaintiff's theory includes the possibility that the green water leaking due to the unsecured coolant hose, Stoddard's affidavit raises a question of material fact as to whether the green liquid (which the Court discussed above was known to be water) could have caused Plaintiff to slip. *See* Stoddard Aff. ¶¶ 5-6 (noting that the engine is designed to catch such liquids inside the engine compartment and that he did not notice any liquid outside the compartment).

ORDER - 9

Plaintiff urges the Court to find that the foregoing affidavits and depositions do not establish a material question of fact. However, with respect to the facts the Court relies upon in issuing this order, Plaintiff has managed to call into question only the deponents' and affiants' credibility, or the amount of weight that should be accorded to the facts within their sworn statements. These are issues for a fact finder to resolve, not the Court. When the Court weighs the facts in the light most favorable to Defendant, it concludes that a material question of fact exists as to whether there was any oil present whatsoever and, if so, whether there was a sufficient amount of oil present to constitute a *hazard* under 49 C.F.R. § 229.119(c).

Therefore, the Court declines to order summary judgment in favor of Plaintiff on this issue because material questions of fact remain for a jury to decide. *See Celotex*, 477 U.S. 317.

### 3. Remaining Issues On Summary Judgment

Because the Court denies in part Plaintiff's motion for summary judgment, the Court must also deny Plaintiff's sub-issues on summary judgment; to wit, whether Defendant's alleged "violations caused – in whole or in part – [Plaintiff's] injuries, and that [Defendant's] violations preclude it from asserting the defense of contributory negligence." *See* Dkt. 34 at 2.

### IV. ORDER

Therefore, it is hereby

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. 34) is **GRANTED** in part and **DENIED** in part as discussed herein.

DATED this 8th day of April, 2010.

BENJAMIN H. SETTLE
United States District Judge